In re James Paul CHRISTENSEN,
Debtor.

AMERICAN EXPRESS TRAVEL RE-
LATED SERVICES COMPANY,
INC., Appellant/Plaintiff,

v.

James Paul CHRISTENSEN,
Appellee/Defendant.

No. 95 C 773.

United States District Court,
N.D. Illinois,
Eastern Division.

March 28, 1996.

James Paul Christensen, pro se.

Bruce de'Medici, Michael Coleman, Riordan, Larson, Bruckert & Moore, Chicago, Illinois, Avi S. Rocklin, Becket & Watkins, Malvern, Pennsylvania, for plaintiff.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

The matter now before the court is a bankruptcy appeal. Appellant American Express Travel Related Services Company, Inc. ("American Express") appeals from an order entered by the bankruptcy court on December 22, 1994, in favor of the appellee James Paul Christensen ("Christensen"), the debtor in bankruptcy. In that order, the bankruptcy court held Christensen's credit card debt to American Express dischargeable and awarded costs to the debtor. American Express has appealed to this court. For the reasons set forth below, this court affirms the order of the bankruptcy court.

### I. BACKGROUND

On January 25, 1994, the debtor, Christensen, filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701 *et seq.* At that time, he had two American Express charge accounts, at least one of which dated back to 1980. The accounts had outstanding balances of $31,733.78 and $14,735.82, respectively. American Express filed a complaint in the bankruptcy court to have a portion of each of these balances determined non-dischargeable.

The portions in question relate to the transactions which follow. Between September 26, 1993 and October 31, 1993, Christensen engaged in forty-seven transactions on his first account for goods and services totaling $4,335.12. On November 15, 1993, he also received a cash advance of $500.00. Between September 25, 1993 and November 1, 1993, he engaged in twenty-five transaction on his second account for goods and services

totaling $5,116.13. Consequently, the amount that American Express sought to be held non-dischargeable totalled $9,951.25.

In early December, 1993, Christensen met with his attorney regarding filing for bankruptcy. He signed his bankruptcy petition two weeks later on December 16, 1993, and filed it on January 25, 1994. Christensen listed on his bankruptcy schedules that his net monthly income was $3,450.00 and his monthly expenses were $4,040.00. He also listed $184,814.82 in unsecured, nonpriority debt.

At trial, Christensen testified that he was an independent health care consultant who contracted with different hospitals and health-care facilities to do various projects. He stated that he used his American Express cards to pay his travel expenses when he visited different facilities to negotiate contracts. Christensen also stated that the activity on these accounts during the time in question was not unusual given the type of travel he engaged in for business. He also testified about two contracts, one in New Orleans, Louisiana and one in Mobile, Alabama, that he was negotiating at the time of the charges in question. He asserted that the majority of the expenses that American Express sought to have determined non-dischargeable came from these negotiations and that at the time he incurred the charges he had every reason to believe he would pay them off.

The trial judge admitted two letters into evidence over the appellant's objections. American Express appeals the admission of these letters, asserting that they contain hearsay, that they were not authenticated, and that they were unduly prejudicial to the appellant. These letters are evidence of the negotiations that Christensen was involved in when he incurred the disputed charges.

After hearing oral argument, the court dismissed the complaint of American Express, discharged the credit card debt and granted Christensen costs.

## II. STANDARD OF REVIEW

■ On an appeal from the bankruptcy court, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." 11 U.S.C.Fed. R.Bankr.Proc. 8013. The district court shall not set aside the bankruptcy court's findings of fact unless clearly erroneous and shall not overturn them so long as they are "plausible in light of the record viewed in its entirety." Id.; Levinson v. United States, 969 F.2d 260, 265 (7th Cir.), cert. denied, 506 U.S. 989, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992) (citing Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). Meanwhile, the district court reviews the bankruptcy court's conclusions of law de novo. Woodbridge Place Apartments v. Washington Square Capital, Inc., 965 F.2d 1429, 1434 (7th Cir.1992).

## III. DISCUSSION

■ The Bankruptcy Code is designed to give insolvent debtors a fresh start. In the Matter of Marchiando, 13 F.3d 1111, 1115 (7th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). However, this opportunity for a fresh start is limited to the "honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ The provisions for the discharge of a Chapter 7 debtor are set out in 11 U.S.C. § 727. Congress, however, enacted 11 U.S.C. § 523 to except certain debts from discharge. Section 523(a)(2)(A) provides that a Chapter 7 discharge will not discharge the debtor from any debt "for money, property, services, or an extension, renewal or refinancing of credit to the extent obtained by— (A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To succeed is a proceeding under this section, the plaintiff must prove: (1) the debtor made a representation to the creditor; (2) the debtor's representation was false; (3) the debtor possessed scienter, i.e., an intent to deceive; (4) the creditor relied on the debtor's misrepresentation, resulting in a loss to the creditor; and (5) the creditor's reliance was justifiable. Field v. Mans, —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); Mayer v. Spanel Int'l Ltd., 51 F.3d 670 (7th

Cir.), *cert. denied,* ―― U.S. ――, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *Matter of Scarlata,* 979 F.2d 521, 525 (7th Cir.1992). These elements must be proven by a preponderance of the evidence. *Grogan,* 498 U.S. at 291, 111 S.Ct. at 661.

■ Congress, in enacting Section 523, apparently decided that the interests of defrauded creditors outweighed the interests of the fraudulent debtor in receiving a fresh start. *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659. Keeping in mind, however, the Bankruptcy Code's primary purpose of giving debtors a fresh start, exceptions to the discharge of indebtedness should be construed strictly against a creditor and liberally in favor of a debtor. *Scarlata,* 979 F.2d at 524. The creditor thus has the burden of proving the exception to discharge. *Id.* (quoting *Minnick v. Lafayette Loan & Trust Co.,* 392 F.2d 973, 976 (7th Cir.), *cert. denied,* 393 U.S. 875, 89 S.Ct. 170, 21 L.Ed.2d 146 (1968)).

■ In this case, it is clear that American Express has not satisfied its burden. With respect to the first element, whether the debtor in fact made a representation, the court holds that he did make one but not to the extent that American Express had hoped. American Express argues that the debtor's use of a credit card is an implied representation of his ability to pay the debt in question. The problem with this analysis, however, is that consumers generally rely on credit cards because they have a present lack of ability to pay. *In re Murphy,* 190 B.R. 327, 332 (Bankr.N.D.Ill.1995); *Matter of Ford,* 186 B.R. 312, 317 (Bankr.N.D.Ga.1995). Entirely more realistic is that a debtor's use of a credit card is a representation that he or she will pay off the debt at some point in the future. *Murphy,* 190 B.R. at 332; *see also In re Alvi,* 191 B.R. 724, 731–32 (Bankr. N.D.Ill.1996) (arguing that the use of a credit card in a credit transaction is not, per se, a representation of anything at all).

■ Assuming there has been a representation regarding future action, the court next must consider whether the debtor had an intent to deceive American Express. Throughout the bankruptcy proceeding, American Express argued that the court should use a multi-factor test inquiring into the reasonableness of the debtor's representation, *i.e.,* use of an "objective" standard. *See, e.g., In re Williams,* 85 B.R. 494, 499 (Bankr.N.D.Ill.1988); *In re Brawner,* 124 B.R. 762, 765 (Bankr.N.D.Ill.1991). This, however, clashes with the Supreme Court's decision in *Field,* which construes the terms in § 523(a)(2)(A) to incorporate the general common law definition of fraud, thus calling for a "subjective" standard requiring inquiry into the debtor's state of mind at the time of the representation. *Field,* ―― U.S. at ――, n. 9, 116 S.Ct. at 443, n. 9. It will be from this "subjective" standard that this court will analyze the case.

■ To determine if Christensen possessed fraudulent intent, the court must consider all the surrounding circumstances. The fact that Christensen subsequently failed to pay his credit card debts does not provide the requisite intent. American Express must show more than that and they have not done so. American Express produced no evidence that Christensen's pattern of charging was particularly unusual immediately prior to the bankruptcy filing. In fact, there is uncontroverted testimony that his spending during this period was less than normal. The evidence also shows that Christensen was a self-employed health care consultant. To make a living, he travelled to potential clients in order to secure contracts. This travel caused Christensen to incur expenses for air fare, hotels, rental cars, and meals and he charged these expenses using his American Express cards. Many of the charges at issue related to Christensen's pursuit of a couple of contracts in New Orleans, Louisiana and Mobile, Alabama. These contracts, however, did not all come to fruition and contributed to the debtor's present position. The evidence also shows that Christensen stopped using his cards on November 15, 1993. He did not meet with an attorney regarding the filing of a bankruptcy petition, however, until December of 1993. American Express also argues that the number of charges made is evidence of the debtor's intent. In this case, the court disagrees and expects multiple charges on many days given the business travel that the debtor engaged in. Based on these circumstances, the bankruptcy court found that American Express had not shown any scheme to defraud, *i.e.,* no

intent to pay for his purchases when he charged them, by the debtor. *See Comerica Bank–Midwest v. Kouloumbris,* 69 B.R. 229 (N.D.Ill.1986). Since this court finds that the bankruptcy judge made no clear error, that court's decision is affirmed.

In addition, the court notes that American Express has not proven the fourth and fifth elements of its case. American Express argues in its brief that mere use of a credit card by the debtor satisfies the card issuer's showing that it not only relied on the debtor's misrepresentation but also that its reliance was reasonable (not simply justifiable, which is what is required). A credit card company's mere passive extension of credit does not constitute any form of reliance, much less that the reliance was justifiable. *Alvi,* 191 B.R. at 731. As Judge Ginsberg stated in *Alvi,* "[a] creditor cannot sit back and do nothing and still meet the standard for actual and justifiable reliance when it had an opportunity to make an adequate examination or investigation." *Id.* Therefore, because American Express presented no evidence indicating any reliance on the debtor's representation, the bankruptcy court was entirely justified in discharging Christensen's credit card debt.

American Express also contends the bankruptcy judge erred by allowing two letters to be admitted into evidence over counsel's objections of inadequate foundation and hearsay. The two letters were evidence of the contracts that Christensen was negotiating at the time of the charges in issue. Without getting to the issue whether the letters were wrongly admitted or not, they were not the crux of this case. The debtor himself testified as to the contracts that he was working on and the charges he was making. The letters were only additional evidence of that. *See, e.g., Bassett v. Local Union No. 705, Int'l Brotherhood of Teamsters,* 908 F.2d 218, 221–22 (7th Cir.1990) (even if the trial court should have admitted checks into evidence, it was harmless error because the evidence would have been redundant since the plaintiffs had been allowed to elicit testimony about these checks during the trial). Accordingly, any wrongful admission of the letters was immaterial and harmless.

American Express also argues that the court erred by improperly relying on Illinois state law. The bankruptcy judge in his ruling stated "[a]lso, as to this type of promise the Court notes that under Illinois law such a promise to pay cannot be the basis for fraud." Transcript of Proceeding before the Honorable Thomas James, December 22, 1994, pp. 75–76. We agree with the appellant that questions of non-dischargeability are governed by the Bankruptcy Code. *See Grogan v. Garner,* 498 U.S. at 284, 111 S.Ct. at 658. However, the trial judge did not base his decision on Illinois law; he noted that this case would fail under Illinois law as well. The judge based his decision on the fact that American Express did not prove an intent to defraud which he judged from the facts and circumstances of this case based solely on federal law. His discussion of state law was superfluous and does not require a reversal.

Finally, American Express contends that the bankruptcy judge erred by awarding costs to the debtor. Under 11 U.S.C. § 523(D), the bankruptcy court shall grant costs to the debtor if the debt is dischargeable and the creditor's position was not substantially justified. Furthermore, in reviewing an award of costs under § 523(d), the appellate court should give deference to the bankruptcy court's resolution. *Matter of Hingson,* 954 F.2d 428, 429 (7th Cir.1992). The bankruptcy court here awarded costs and this court agrees. American Express's argument in this case was tenuous and it failed to prove up all the elements of its claim. Accordingly, this court holds that the bankruptcy court's finding was not clearly erroneous and affirms its awarding of costs to the debtor.

## IV. CONCLUSION

The Bankruptcy Court's order on December 22, 1994, discharging Christensen's credit card debt and awarding costs to the debtor, is affirmed.