559 F.2d 557
 John M. GEDDES, P. M. C. van der Spank, Schutzgemeinschaft
der USI-ANLEGER und Anlageberater, for themselves
and all others similarly situated, and
Enrico Chesi, a creditor,
Plaintiffs-Appellants,
v.
UNITED FINANCIAL GROUP, a corporation, United States
Investment Plan, Ltd., a corporation, United Growth Fund,
Inc., a corporation, United Income and Growth Fund, Inc., a
corporation, Euro-American Real Estate Fund, Inc., a
corporation, USI Venture Fund, Inc., a corporation, Fund of
Nations, Inc., a corporation, Design Fund, Inc., a
corporation, Argus Real Estate, Inc. of California, a
corporation, Argus Real Estate, Inc., a corporation, Atlas
Properties, Inc., a corporation, Port-West, Inc., a
corporation, Standard Growth Properties, Inc., a
corporation, Standard Investment Company, a corporation,
Taylor and Associates Advertising, Inc., a corporation,
United States Investment Bank, a corporation, U.S.I.
Management, Ltd., a corporation, U.S.I. Management A. G., a
corporation, U.S. Investment Services, Ltd., a corporation,
U.S.I.S. Investment Services, a corporation, United States
Real Estate Corporation, a corporation, U.S.I. Securities,
Inc., a corporation, Harris Management Company, Inc., a
corporation, United States Land Investment X, a corporation,
International Securities Underwriters, Inc., a corporation,
Consolidated Insurance International, Inc., a corporation,
U.S.I. Distributors, Inc., a corporation, Unit & Co., a
corporation, U.S. Investment Management (UK), Ltd., a
corporation, Robert W. Pollock, Douglas K. Pollock, Robert
J. Walker, Frank Weigel, Sandra Pollock, Barry Snider,
Defendants-Appellees.
 No. 75-1468.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 22, 1977.
 
 Thomas H. Carver, Beverly Hills, Cal., Alfred A. Hampson, Hampson & Bayless, Portland, Or., argued, for plaintiffs-appellants.
 William E. Tassock, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before TRASK, Circuit Judge, and JAMESON,* District Judge.
 PER CURIAM:
 
 
 1
 On October 13, 1971, John M. Geddes and others filed a class action against United Financial Group, Inc., its subsidiary corporations, and Robert Pollock, Douglas Pollock, Sandra Pollock, Robert Walker, Barry Snider, and Frank Weigel. The complaint alleged fraud as well as violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the laws of the states of Oregon and California. The complaint prayed for, inter alia, compensatory and punitive damages, a preliminary injunction, and appointment of a receiver.
 
 
 2
 In addition to the instant action, the fraud alleged in the Geddes complaint gave rise to two other lawsuits: SEC v. United Financial Group, Inc., Case No. 72-41 (under consideration by the same district court as the instant action), and Wenzoski v. Pollock, Marin County, California, Superior Court No. 62826. On July 12, 1972, an order of consolidation was entered, consolidating for purposes of discovery the Geddes and SEC actions.
 
 
 3
 On March 26, 1973, plaintiffs in the instant case filed a motion for summary judgment against United Financial Group and its affiliated corporations. That motion was granted by the trial court on April 10, 1973, and was affirmed by this court on appeal. Geddes v. United Financial Group, Inc., No. 73-2418 (9th Cir. March 11, 1974). On September 5, 1973, a final judgment against the corporate defendants was entered in the amount of $66,900,000, which sum was "intended to equal (plaintiffs') total investments and deposits in the defendant corporations . . . plus interest thereon at the rate of six percent (6%) per annum from the date of investment . . . ."
 
 
 4
 On April 30, 1974, pursuant to a motion of the plaintiff class, the district court found that all the individual defendants except Frank Weigel were in default for failure to plead or otherwise defend, as provided by the Federal Rules of Civil Procedure. Defendant Douglas Pollock and defendants Robert Pollock, Sandra Pollock, Robert Walker, and Barry Snider filed motions to set aside the default on May 6 and May 8, 1974, respectively.
 
 
 5
 Co-counsel for plaintiffs filed an affidavit dated May 3, 1974, averring that the amount due plaintiffs from the individual defendants was $66,900,000 "as appears from the Final Judgment Against Corporate Defendants in this case, filed September 5, 1973." Five months later, October 11, 1974, after protracted settlement efforts, a hearing was held before Judge Belloni at which appellees Walker, Snider, and Douglas Pollock testified as to their financial condition and ability to pay any judgment which might be rendered against them.
 
 
 6
 After testimony had been taken and evidence received, the district court observed that it would be "in the best interest of the parties in this case to fashion some remedy other than simply a judgment for a large sum of money against these three defendants, which judgment would be uncollectable." The court then proposed that counsel for the individual defendants prepare a decree for the court's signature which would be in lieu of a money judgment against these three defendants-appellees.
 
 
 7
 Pursuant to the court's suggestion, proposed decrees against Snider, Walker, and Douglas Pollock were prepared. Judgments were then entered for plaintiffs and against defendants-appellees on December 2, 1974. The judgments, which are identical, provide that as to each defendant-appellee:
 
 
 8
 a. plaintiffs have judgment in the amount of $2500; execution to be stayed for one year;
 
 
 9
 b. his claim for wages and expense reimbursement and his claim as an investor in United Financial Group, Inc. and its subsidiaries filed with the receiver appointed in SEC v. United Financial Group, Inc., supra, are denied; and
 
 
 10
 c. any assets owned by defendant-appellee, not heretofore disclosed, or which have been substantially undervalued in said disclosures, are adjudged assets of the receivership estate established in the SEC action.
 
 
 11
 On December 31, 1974, a member of the plaintiff class, Enrico Chesi, filed notice of appeal from each of the three judgments.
 
 
 12
 Appellant's initial contention here is that the trial court erred in entering judgments against appellees in amounts less than the $66,900,000 award entered against the corporate defendants in this action. In support of his contention appellant points out that the complaint in this case explicitly alleges that each appellee is "jointly and separately liable with, and to the same extent as, said corporate defendants." Appellant also draws our attention to the allegation in the complaint that appellees used the corporate defendants as a scheme and device to avoid individual liability, and that each of the corporate defendants "was and now is the alter ego of each of said individual defendants." Appellant argues that upon appellees' defaults in this suit, appellees admitted this joint liability for the full amount of $66,900,000.
 
 
 13
 The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Pope v. United States, 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). See also 10 Wright & Miller, Federal Practice and Procedure § 2688, at 280, 284 (1973). Support for this general rule is found in Rule 8(d) of the Federal Rules of Civil Procedure which reads:
 
 
 14
 "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."
 
 
 15
 Further support for the rule can be found in Federal Rule of Civil Procedure 55(b) which expressly authorizes the court to conduct a hearing on the issue of damages before entering a judgment by default. Accordingly, we reject appellant's assertion that appellees' defaults admitted the full $66,900,000 damages claimed. Appellees' defaults established their respective liabilities, but not the extent of the damages to the plaintiff class.
 
 
 16
 Appellant also contends that the trial court erred in entering judgments that were based in part on appellees' abilities to pay. It is undisputed that the trial court reduced the money judgments against appellees after taking into account their financial conditions.
 
 
 17
 It has been widely held by the courts that have considered the problem that the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded. See, e. g., Eisenhauer v. Burger, 431 F.2d 833, 837 (6th Cir. 1970); Parkins v. Brown, 241 F.2d 367, 368 n.2 (5th Cir. 1957); Blankenship v. Rowntree,219 F.2d 597, 598 (10th Cir. 1955). The rationale behind this general rule is sound. The design of compensatory damages is to make plaintiff whole. McKenney v. Buffelen Manufacturing Co., 232 F.2d 5, 11 (9th Cir. 1956), and the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result. Blankenship v. Rowntree, supra, at 598. We agree with the overwhelming majority of courts which have examined this issue and which have disapproved of the use of a defendant's financial condition in determining compensatory damages. Therefore, we hold that the trial court erred in relying upon this factor in fashioning the judgments entered against appellees.
 
 
 18
 Appellant next argues that the trial court erred in staying executions on the judgments for one year. We agree. Rule 62 of the Federal Rules of Civil Procedure is very explicit concerning the protection afforded to litigants who seek a stay at various stages of the proceedings. The presence of such comprehensive protection implies the absence of such power in time periods not covered by the Rules. United States v. One 1962 Ford Galaxie Sedan, 41 F.R.D. 156, 157 (S.D.N.Y.1966). See 7 Moore, Federal Practice P 62.03, at 62-13 & 62-14 (1975). The trial court here made no attempt to justify its stays by any of the provisions of Rule 62. Indeed, it is clear that executions on the judgments were stayed as accommodations to appellees after the court had examined their abilities to pay the judgments. Given this reason for its action, we find that the trial court abused its discretion in imposing the stays.
 
 
 19
 Appellant further assigns error to those portions of the judgments which deny appellees' claims for wages and expense reimbursements and their claims as investors in United Financial Group and its subsidiaries. The basis for the court's denial of appellees' claims in the SEC action is appellees' express withdrawal of their claims made in open court during the Geddes proceedings. Appellant properly points out that the withdrawal of appellees' claims should have been made in the SEC action. As the instant action (Geddes) and the SEC action have been consolidated merely for the purpose of discovery, the trial court erred in incorporating the withdrawal of appellees' SEC claims in the judgments entered in the present action.
 
 
 20
 Finally, appellant objects to the provisions of appellees' judgments providing for forfeiture to the SEC receivership of any assets of appellees "not heretofore disclosed to Plaintiffs' counsel, or the part of any asset which has been substantially undervalued in said disclosures." Appellant contends that the SEC receiver is not a party to the instant action, and therefore the provisions in issue result in a forfeiture of appellant's cause of action in favor of the receiver without due process of law. We are compelled to agree. The transfer, without a hearing, to the receiver in the SEC proceeding of a portion of appellees' assets to which appellant has a rightful claim clearly violates the Fifth Amendment provision that "(n)o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." The fact that the instant case and the SEC action were consolidated for purposes of discovery "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97, 53 S.Ct. 721, 728, 77 L.Ed. 1331 (1932) (footnote omitted).
 
 
 21
 The judgments against appellees are reversed and the case is remanded to the district court for further proceedings not inconsistent with the views expressed in this opinion.
 
 
 22
 REVERSED and REMANDED.
 
 
 
 *
 Honorable William J. Jameson, United States Senior District Judge, District of Montana, sitting by designation
 On the morning set for argument one of the panel of three judges recused himself. Counsel were advised of the action and elected to argue and submit the case to Judge Trask and Judge Jameson as a majority remaining rather than to reset the case to another panel at a later date.